NUMBER
13-02-236-CV

 

                             COURT
OF APPEALS

 

                   THIRTEENTH
DISTRICT OF TEXAS

 

                                CORPUS
CHRISTI

___________________________________________________________________

 

                              IN RE: LaSETHIA G. WHITELEY

___________________________________________________________________

 

                            On
Petition for Writ of Mandamus.

__________________________________________________________________

 

                                   O
P I N I O N

 

        Before
Chief Justice Valdez and Justices Dorsey and Rodriguez

                                Opinion
by Justice Rodriguez

 

In this original proceeding, relator, LaSethia G. Whiteley,
seeks mandamus relief from an order issued by respondent, the Honorable Robert
C. Cheshire, of the 377th District Court of Victoria County, denying Whiteley=s motion to
compel discovery of non-party medical records by real party in interest, John
C. Wright, M.D.  We conclude respondent
abused his discretion, and conditionally grant the petition for writ of
mandamus.








                                                    I.  Background

The underlying action is for medical malpractice.  Dr. Wright, a physician and defendant in this
lawsuit, performed a total knee replacement on Whiteley.  During the surgery, Dr. Wright used the
Cave-Rowe technique to resurface the kneecap.[1]  Whiteley sued Dr. Wright claiming the total
knee replacement failed.  Whiteley=s motion to
compel production of records of 
non-party medical records of patients on whom Dr. Wright performed the
Cave-Rowe procedure was denied.[2]  The trial court also denied her motion on
rehearing.  Whiteley seeks mandamus
relief from this discovery ruling.

II.  Standard of Review

Mandamus is an extraordinary writ and should issue only to
correct an abuse of discretion.  Walker
v. Packer, 827 S.W.2d 833, 842 (Tex. 1992) (orig. proceeding).  The trial court has no discretion to
misinterpret or misapply the law.  Id.
at 840.  A clear abuse of discretion
occurs when the trial court clearly fails to analyze or apply the law
correctly.  Id.  Mandamus will not issue when there is an
adequate remedy by appeal.  Id.

 








III.  Abuse of Discretion

Whiteley contends the trial court abused its discretion when it
failed to apply an exception to the physician-patient privilege.

A.  Exception to
Physician-Patient Privilege

Texas Rule of Evidence 509 provides that A[c]onfidential
communications between a physician and a patient, relative to or in connection
with any professional services rendered by a physician to the patient are
privileged and may not be disclosed.@  Tex.
R. Evid. 509(c)(1).  However, an
exception to the physician-privilege applies (1) when the condition is relied
upon as part of a party=s claim or
defense, meaning that the condition itself is a fact that carries some legal
significance, and (2) when the records sought to be discovered are relevant to
the condition at issue.  Id. at
509(e)(4); R.K. v. Ramirez, 887 S.W.2d 836, 843 (Tex. 1994) (orig.
proceeding).  The privilege is terminated
when any party relies on the condition of the patient as part of his claim or
defense, Aeven though the
patient has not personally placed the condition at issue, and even though the
patient is not a party to the litigation.@  Id. at 842; see Bristol-Myers
Squibb Co. v. Hancock, 921 S.W.2d 917, 921 (Tex. App.BHouston [14th
Dist.] 1996, orig. proceeding).

1.  Condition Relied on
as Defense








In assessing the application of the exception to the
physician-patient privilege, we must first determine whether the condition of
Dr. Wright=s patients is
part of a claim or defense in this case. 
R.K., 887 S.W.2d at 843. 
This determination should be made on the face of pleadings, without
reference to evidence that is allegedly privileged.  Id. at 843 n.7; Bristol-Myers
Squibb Co., 921 S.W.2d at 921.  

In her original petition, Whiteley asserted Dr. Wright failed
to properly perform medical treatment necessary according to the standards set
by the medical profession.  Whiteley
claimed this alleged breach of duty proximately caused her damages.  In his second amended answer, as one of his
defenses, Dr. Wright asserted he Awould show that
he did not fail in any duty owed to [Whiteley] for the reason he acted
appropriately under the circumstances at all times.@  While Dr. Wright=s answer
provides a general defense to Whiteley=s liability
claim, it does not provide the underlying basis for that defense.

However, further insight into the basis of Dr. Wright=s defense can
be gained from other materials filed by Dr. Wright, and from his deposition
testimony.  See Bristol-Myers Squibb
Co., 921 S.W.2d at 922.  In response
to Whiteley=s request for
disclosure of legal theories and the factual bases of his defenses, Dr. White
responded, AThis Defendant=s care of the
Plaintiff did not fall below the standard of care.  Defendant treated Plaintiff reasonably and
appropriately.  Further, Defendant has
performed the procedure in question numerous times without complications.@  At his deposition, Dr. Wright testified that
of the total knee replacements he had performed using the Cave-Rowe technique,
only three, including Whiteley=s surgery, had
failed.[3]








Based on the above, we conclude Dr. Wright is relying on the
medical condition of his other patients as the basis of his defense that he has
been successful in the use of the Cave-Rowe technique.  See id.  Because of this success, Dr. Wright contends
he acted appropriately, satisfying the standard of care and breaching no duty
owed to Whiteley.  The medical condition
of Dr. Wright=s patients, the
patients on whom he performed the Cave-Rowe technique, is part of his defense
in this case.  See R.K., 887
S.W.2d at 843 n.7; Bristol-Myers Squibb Co., 921 S.W.2d at 921-22.  Thus, the condition itself is a fact that
carries some legal significance.  See
R.K., 887 S.W.2d at 843.  The first
prong of the test for application of the exception to the physician-patient
privilege has been met.  See id.








We note, however, A[e]ven when a
document contains some information meeting this standard [that the condition is
part of a claim or defense], any information in the document not meeting the
standard remains privileged and must be redacted or otherwise protected.@  Bristol-Meyers Squibb Co., 921 S.W.2d
at 921 n.5.  Whiteley has acknowledged
the appropriateness of such redaction.[4]  Therefore, identifying information and other
information not relevant to the condition that is part of Dr. Wright=s defense must
be redacted from the requested medical records.[5]

2.  Relevant Records

Whiteley also contends the records are relevant to the
condition at issue.  This is the second
prong that must be satisfied before the exception to the privilege will
apply.  See R.K., 887 S.W.2d 843.








Relevant evidence is Aevidence having
any tendency to make the existence of any fact that is of consequence to the
determination of the action more or less probable than it would be without the
evidence.@  Tex.
R. Evid. 401.  From the face of
Dr. Wright=s answer, and
consistent with his responses, the condition of Dr. Wright=s patients on
whom he used the Cave-Rowe procedure would be a factor affecting the standard
of care in this case and the alleged breach of that standard.  Dr. Wright=s defense depends on the success rate
reflected in his patient=s medical
records.  Whiteley requests the records
to determine whether or not Dr. Wright=s defense has
any factual basis.  Therefore, the
requested records would yield information that would make the existence of Dr.
Wright=s defense
regarding standard of care and breach of that standard more or less probable
than it would be without the evidence.  See
id.  The medical records are clearly
probative and relevant to these issues.  See
id.  The second prong of the test has
been met.  See R.K., 887 S.W.2d at
843.

We conclude the court abused its discretion when it did not
apply the exception to the physician-patient privilege and denied Whiteley=s motion to
compel production of redacted non-party medical records of Dr. Wright=s patients on
whom he used the Cave-Rowe procedure.

B.  Burdensome/Overbroad

Whiteley also contends the trial court abused its discretion
because the production of the requested records is not overbroad or burdensome.

The Texas Supreme Court has identified requests as Aoverbroad@ when they
encompass time periods, activities, or products that are not relevant to the
case at hand.  See In re Alford
Chevrolet-Geo, 997 S.W.2d 173, 181 n.1 (Tex. 1999) (orig. proceeding).  The sheer volume generated from a discovery
request will not render that request overbroad as a matter of law.  See id.  Trial courts are encouraged to limit
discovery when Athe burden or
expense of the proposed discovery outweighs its likely benefit.@  Tex.
R. Civ. P. 192.4(b).  The court is
to take into consideration Athe needs of
the case, the amount in controversy, the parties= resources, the importance of the issues
at stake in the litigation, and the importance of the proposed discovery in
resolving the issues.@  Id.








Karey Beth Ohrt, Dr. Wright=s office manager, testified Dr. Wright
performed approximately 200 total knee replacements between 1993 and 2001, 173
as the primary surgeon and the remaining as the assistant surgeon.  Although the computer system went back as far
as November 1989, Ohrt began her search with 1993 files because Dr. Wright
informed her he used the Cave-Rowe procedure on all total knee replacements he
had performed since 1993.  

By affidavit, Ohrt stated that the production of medical
records relating to all patients who have had the Cave-Rowe procedure would be
extremely burdensome, based on the amount of time and money that would be
expended.  Ohrt concluded it would take
one employee approximately two months to pull and copy the information, at a
cost of approximately $4,300.00, not including employee wages.  Later, at her deposition, however, Ohrt
explained it would take an average of only two minutes to pull each active
file.[6]  Locating inactive files[7]
would take longer because, at that time, they were stored in boxes off-site and
were not organized.  Ohrt also testified
that on May 8, 2001, they began the process of scanning all inactive
files.  Thus, once scanned, those files
would be accessible by performing a computer search.








Taking into consideration the needs of the case, the parties= resources, the
importance of this issue in the litigation, and the importance of the proposed
discovery in resolving the issue, we conclude the likely benefit of the
proposed discovery of the requested medical records from November 1989 to the
present, records that are accessible from Dr. Wright=s office,
outweighs the burden or expense.[8]  See Tex.
R. Civ. P. 192.4(b).  The volume
generated from Whiteley=s request does
not render the request burdensome.  See
In re Alford Chevrolet-Geo, 997 S.W.2d at 181 n.1.  We also recognize that, A[t]o the extent
that a discovery request is burdensome because of the responding party's own
conscious, discretionary decisions [for example, the unorganized storage of
inactive patient records], that burdensomeness is not properly laid at the feet
of the requesting party, and cannot be said to be >undue.=@  ISK Biotech Corp. Lindsay, 933 S.W.2d 565,
569 (Tex. App.BHouston [1st
Dist.] 1996, orig. proceeding).

Finally, Dr. Wright argues Whiteley=s discovery
request is merely a fishing expedition. 
The Texas Supreme Court has emphasized that discovery may not be used as
a fishing expedition.  In re Am.
Optical Corp., 988 S.W.2d 711, 713 (Tex. 1998).  Discovery requests must not be overly broad,
but reasonably tailored to include only matters relevant to the case.  In re Xeller, 6 S.W.3d 618, 626 (Tex.
App.BHouston [14th
Dist.] 1999, orig. proceeding).  With the
redactions and time restrictions set out above, we conclude the request is not
overly broad, but is reasonably tailored to include only matters relevant to
the case.  The discovery request at issue
cannot be characterized as a fishing expedition.  See In re Am. Optical Corp., 988
S.W.2d at 713.








Accordingly, we conclude the trial court abused its discretion
to the extent the court=s order found
the production of redacted medical records of Dr. Wright=s patients on
whom he performed the Cave-Rowe procedure since November 1989 was burdensome
and overbroad.

IV.  Remedy by Appeal

Mandamus will not issue when there is an adequate remedy by
appeal.  Walker, 927 S.W.2d at
842.  Remedy by mandamus lies in a trial
court=s denial of
discovery if the denial vitiates or substantially compromises a party=s ability to
present a claim or defense.  See id.
at 843.  There is no adequate remedy at
law if the denied discovery goes to the heart of a party=s claim or
defense.  See id., In re
Colonial Pipeline Co., 968 S.W.2d 938, 942 (Tex. 1998) (orig. proceeding).








The discovery sought is evidence bearing on the accuracy of Dr.
Wright=s defensive
claim.  If Dr. Wright relies on the
results of the surgery performed on other patients, it is difficult to perceive
that Whiteley would not find it necessary to review those same patient records
to counter Dr. Wright=s defense.  Without production of the requested medical
records, Whiteley is effectively prevented from challenging Dr. Wright=s defensive
claim; she cannot verify or refute Dr. Wright=s defense. 
The denial of the discovery request goes to the heart of the case
because the trial court=s denial
substantially compromises Whiteley=s ability to
present her claim because she has no way to challenge Dr. White=s defense.  See Walker, 827 S.W.2d at 843; In
re Colonial Pipeline Co., 968 S.W.2d at 942.  Moreover, the reviewing court would be unable
to evaluate the effect of a denial of discovery because the unproduced
documents would not be included in the record. 
See Walker, 827 S.W.2d 843-44. 
Accordingly, remedy by appeal is not sufficient.

V.  Conclusion

Because the exception to the physician-patient privilege
applies and the production of Dr. Wright=s redacted
records for those patients on whom he performed the Cave-Rowe technique from
November 1989 to present is not burdensome or overly broad, we conclude the
trial court abused its discretion when it denied Whiteley=s motion to
compel.  Accordingly, we conditionally
grant Whiteley=s petition for
writ of mandamus.  If, within ten days of
this opinion, the trial court fails to enter an order consistent with this
opinion, we will issue the writ.                             

 

NELDA
V. RODRIGUEZ

Justice

 

Publish.

Tex.
R. App. P.
47.3.

 

Opinion delivered and
filed

this 13th
day of June, 2002.

 











[1]The
Cave-Rowe technique is a biological resurfacing procedure that involves
resurfacing the patella or kneecap with the infrapateller fat pad, rather than
with a patella Abutton,@
a prosthetic component supplied by manufacturers of knee prostheses.  This procedure forms the basis of the
discovery request at issue in this mandamus proceeding.





[2]On
rehearing, Whiteley, narrowing her request, asked the court to order Dr. Wright
to produce only records that were easily accessible at Dr. Wright=s
office.  Furthermore, evidence relied on
by both parties related to specific records retrievable from Dr. Wright=s
office.  Therefore, we limit our review
to those specific records.





[3]Furthermore,
the record reveals Dr. Wright=s
counsel affirmatively set out that it was Dr. Wright=s
intent to use the success of the procedure as a defense in this case.  At the motion for rehearing, Dr. Wright=s
counsel stated A[Dr. Wright]
has performed this procedure since he was in residency.@  He continued by urging, ATo
deny him the right to say that it=s
a procedure he uses because it works for him will, basically, give him no
defense at all.@  Furthermore, Dr. Wright=s
counsel indicated James B. Shook, D.O., a non-suited defendant in this case,
would testify that Dr. Wright has had success with this procedure.  Dr. Wright=s
counsel also commented that Whiteley=s
expert stated he had not heard of the technique so there must be something
wrong with it, and that he further admitted if a doctor has a success rate like
Dr. Wright says he does, use of the procedure in question would not fall below
the standard of care.





[4]During
the rehearing on the motion to compel, Whiteley=s
counsel commented, AWe don=t
want to invade patient privacy.  We=re
willing to, if they turn over these records, to have them block out patient
names, Social Security numbers, anything like that.@





[5]Dr.
Wright argues that even if redacted, the records should not be produced because
of the physician-patient privilege.  Dr.
Wright relies on In re Columbia Valley Reg. Med. Ctr., 41 S.W.3d 797,
800-02 (Tex. App.BCorpus Christi
2001, orig. proceeding).  His reliance is
misplaced, however, because no exception to the privilege was asserted in In
re Columbia.  Id. at 799.





[6]An
active file was described as the file of a patient who has seen Dr. Wright
during the past three years.





[7]Inactive
files are those records of patients who saw Dr. Wright more than three years
ago.





[8]Rule
196.3 of the Texas Rules of Civil Procedure requires only that items requested
be produced for inspection and copying.  See
Tex. R. Civ. P. 196.3.